UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R<small>ICHARD</small> A. K<small>ERBAWY</small>,

    Plaintiff,                                                Hon. Ellen S. Carmody

v.                                                                  Case No. 5:05-cv-00137

N<small>ATIONAL</small> R<small>AILROAD</small> P<small>ASSENGER</small>
C<small>ORPORATION</small>, et al.,

    Defendants.
_____/

R<small>USSELL</small> P<small>OUCH</small>,

    Plaintiff,                                                 Hon. Ellen S. Carmody

v.                                                                   Case No. 5:05-cv-00138

N<small>ATIONAL</small> R<small>AILROAD</small> P<small>ASSENGER</small>
C<small>ORPORATION</small>, et al.,

    Defendants.
_____/

**OPINION AND ORDER**

       These cases are the result of a tragic car/train accident in which both a mother, Melanie Pouch, and her daughter, Meghann Pouch, were killed. Substantial settlements with the defendant railroads were reached in both cases. The case of the estate of 15-year-old Meghann Pouch was settled for $1.5 million and after attorney fees and costs netted the estate with the sum of $990,716.70. Claimants to this amount are Meghann's father, Russell Pouch, with whom she lived at the time of her death, her older brother Sean and her maternal grandmother Muriel "Jean" Mills.

Meghann's paternal grandmother, Anna Wiles, waived in writing any claim she might have to the recovery. Melanie Pouch's estate settled her case for $1 million, with a net recovery of $644,000 for distribution. The potential claimants to this recovery include Sean Pouch, Melanie's son; Michele Godlewski, Melanie's sister; and Muriel "Jean" Mills, Melanie's mother. A dispute arose in both cases over the appropriate distribution of the respective settlement proceeds. The case involving Meghann Pouch's estate was referred to the undersigned for a settlement conference by the Honorable Gordon J. Quist. That settlement conference was held on August 29, 2006.

During the conference, I had the opportunity to talk with each claimant with their respective attorneys present, and all parties have consented to my resolving the distribution in both estates and waived the right to a hearing under the Michigan Wrongful Death Statute. MCL 600.2922 and MCL 700.3924.

I.   FINDINGS OF FACT

By all accounts, the divorce between Russell and Melanie Pouch in the late 1990s was a difficult one. At least part of the difficulty was a difference in parenting styles, with Melanie being more permissive and Russell being more strict. Ultimately, Meghann chose to live with her father, and Sean with his mother. Based on the conversations I had with the various parties during the settlement conference, the Court finds the following.

All of the claimants are very decent people grieving for the loss of these two lives, each in his or her own way. The disputes among them are largely the result of various misunderstandings, exacerbated by grief and a difficult divorce. Both Russell and Melanie Pouch loved their children Meghann and Sean. Sean was a troubled teenager who had become alienated from his father but by all accounts was very close to his mother and his sister. At least in part as a result of the tragedy in

2

which he lost both his mother and sister, Sean Pouch is attempting to turn his life around and there has been a rebuilding of the relationship between Sean and his father, one of the bright spots in this tragic story.

There have been some serious misunderstandings between Russell and Sean Pouch on the one hand and Melanie's sister, Michele Godlewski. In a recent telephone conference call, the Court encouraged counsel to attempt to resolve some of the misunderstandings involving Melanie and Meghann Pouch's personal property.

II.   ANALYSIS

A court of law is a clumsy forum in which to judge the quality of human relationships. Decisions based on sincere but relatively brief conversations with the Court are likewise imperfect. However, the Court is persuaded that it was the better part of wisdom on behalf of all claimants and their respective attorneys to forgo an adversarial hearing in these matters, which hearing would likely have exacerbated the grief and misunderstandings among the parties. So, now the Court has the difficult task of determining distribution under Michigan's wrongful death statute, guided by *Crystal v. Hubbard*, 414 Mich. 293; 324 N.W.2d 869 (1982), which states the only reasonable measure of the actual destruction caused is to assess the type of relationship the decedent had with the claimant in terms of objective behavior and indicated by time and activities shared, and the overall characteristics of the relationship.

   A.   Estate of Meghann Pouch

By every claimant's account, the loss of both his mother and sister was devastating to Sean Pouch. As earlier noted, one positive note is the rebuilding of the father/son relationship between Russell and Sean Pouch. Sean was candid about his lack of experience and ineptitude in handling

money. He is twenty years old. Because Sean and his father had reached an agreement that Sean should receive $200,000 from the settlement proceeds in the estate of his sister Meghann, and because he will receive the bulk of his mother's estate, the Court concludes that the agreed amount is appropriate and Sean will receive the amount of $200,000 from Meghann's estate. Because of Sean's acknowledgment of his financial inexperience, the Court recommends that the total award to Sean be structured in a manner to support his long-term best interest, with consideration being given that any structured settlement should be inalienable.

Muriel "Jean" Mills has suffered the loss of her daughter and granddaughter. The Court has concluded that Jean's relationship with her granddaughter was a positive one. The fact that their contact had been more sporadic prior to Meghann's death seems perfectly normal given Meghann's adolescence. Jean Mills should receive $50,000 from the estate of her granddaughter Meghann Pouch. This is not to minimize her loss. Rather, it is in recognition of the fact that she is in her mid-eighties.

Russell Pouch's grief over the loss of his daughter was palpable. Although their relationship had been historically somewhat stormy, the Court concludes that it was turning around and would have continued to do so. Meghann was gaining maturity as illustrated by her recent enjoyment of and success in school and other teenage extra-curricular activities. Russell Pouch has lost the ability to watch his daughter grow and mature, to possibly marry and give him grandchildren. For these reasons, the Court concludes that Russell Pouch should receive the remainder of the proceeds, including any accrued interest, in the case of the Estate of Meghann Pouch.

### B. Estate of Melanie Pouch

With respect to the estate of Melanie Pouch, Jean Mills sustained the terrible loss of a daughter, and Michele Godlewski the loss of a sister with whom she was good friends. Michele sought medical treatment following the death of her sister. With the loss of her sister, she is also left alone with the financial and emotional responsibility of caring for their mother, who, as noted, is in her mid-eighties. Certain actions she took in securing the house of her sister, although perhaps misguided in retrospect, have also been misunderstood. Her given reason, which is sensible, was that the house was going to be subject to foreclosure, and that Sean, who admittedly at the time was running somewhat amok, was not taking care of it.

For these reasons, the Court awards Muriel "Jean" Mills and Michele Godlewski $144,000 from the settlement proceeds of the Estate of Melanie Pouch, such $144,000 to be divided equally between them, with the balance of the settlement proceeds, including any accrued interest, going to Sean Pouch to purchase a structured settlement.

### III. CONCLUSION

The Court can only hope that its opinion and resolution of this matter will help move the individual claimants forward with their respective grieving processes, and perhaps encourage the healing of some misunderstandings. Within thirty days of this order, the parties shall submit a stipulation and proposed order for dismissal in each of these matters, such dismissal to be with prejudice and without costs.

Date: September 26, 2006         /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge